David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*THERESA M. DOLAN*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| THERESA M. DOLAN, | : |
| | : |
| Plaintiff, | : Civil Action No.: |
| v. | : |
| | : |
| BANK OF AMERICA, NATIONAL | : **COMPLAINT FOR DAMAGES** |
| ASSOCIATION; CITIBANK, | : **PURSUANT TO THE FAIR** |
| NATIONAL ASSOCIATION; | : **CREDIT REPORTING ACT, 15** |
| NATIONSTAR MORTGAGE, LLC; | : **U.S.C. § 1681, ET SEQ.** |
| DEPARMENT STORES NATIONAL | : |
| BANK D/B/A MACYS/ DSNB; | : **JURY TRIAL DEMANDED** |
| EQUIFAX INFORMATION | : |
| SERVICES, LLC; INNOVIS DATA | : |
| SOLUTIONS, INC, | : |
| | : |
| Defendants. | : |
| | : |

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods

undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. THERESA M. DOLAN ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of BANK OF AMERICA, NATIONAL ASSOCIATION ("BOA"), CITIBANK, NATIONAL ASSOCIATION ("CITIBANK"), NATIONSTAR MORTGAGE, LLC ("NATIONSTAR"), DEPARMENT STORES NATIONAL BANK D/B/A MACYS/ DSNB ("MACYS"), EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), and INNOVIS DATA SOLUTIONS, INC, ("Innovis")  (or jointly as "Defendants") with regard to erroneously reporting derogatory credit information to national reporting agencies.

3.  Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

## JURISDICTION AND VENUE

4.  This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

5.  This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

6.  Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Equifax has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

## PARTIES

7.  Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8.  Defendant BOA is a corporation doing business in the State of Nevada.

9.  Defendant BOA is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

10. Defendant CITIBANK is a corporation doing business in the State of Nevada.

11. Defendant CITIBANK is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

12. Defendant NATIONSTAR is a corporation doing business in the State of Nevada.

13. Defendant NATIONSTAR is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

14. Defendant MACYS is a corporation doing business in the State of Nevada.

15. Defendant MACYS is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

16. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Equifax

is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

17. Defendant Innovis regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Innovis is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business in Nevada, with a principal place of business in Ohio.

18. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

## GENERAL ALLEGATIONS

19. On or about 7/29/2009, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 09-23568-abl (the "Chapter 13" or "Bankruptcy").

20. The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

21. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan.

22. None of the Defendants named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

23. None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

24. Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy on 3/03/2014.

25. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any of the creditor-defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

26. However, Defendants named herein, and each of them, either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

27. Defendant's reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on Defendant's pre-bankruptcy contract terms with the

Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate".

28. The adverse information reported by Defendants was based on each Defendant's improper enforcement and reporting of pre-bankruptcy obligations, where such reporting failed to comply with the payment structure set forth in the Plaintiff's Chapter 13 Plan.  Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate, since all the Plaintiff's pre-bankruptcy creditors (whether eventually discharged or not) were subject to repayment pursuant to the Chapter 13 plan terms while the Bankruptcy was pending.

29. Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

30. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

31. Courts rely on such guidance to determine furnisher liability.  *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit

reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

32. On information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

33. On information and belief, each furnisher-Defendant named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

34. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

35. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id*., with the following relevant exceptions:

    a. <u>Current Balance</u>

i.  For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the outstanding balance amount. *Id*.

ii.  However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 plan balance, which should decline as payments are made." *Id*. at 6-22.

iii.  And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

b.  <u>Scheduled Monthly Payment Amount</u>:

i.  For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "contractual monthly payment amount." *Id*. at 6-21.

ii.  However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 Payment Amount." *Id*. at 6-22.

iii.  And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

36. Despite Metro 2 Format's instructions, each furnisher-Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

37. To this end, the adverse reporting on the Plaintiff's report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

38. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

## THE EQUIFAX VIOLATIONS

### BOA Misreported Credit Information

### RE: Account No. 1474

39. In an Equifax credit report dated November 11, 2015, BOA inaccurately reported that there was an "actual payment amount" of $550, even though Plaintiff was discharged on 3/03/2014 and no payments were due or made on this account creating the misleading and false impression that a debt was still owed and due.

40. BOA also inaccurately reported that there was a "scheduled payment amount" of $279, even though Plaintiff was discharged on 3/03/2014 and no payments

were due on this account creating the misleading and false impression that a debt was still owed and due.

41. On or about June 9, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed BOA's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by BOA.

42. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

43. Upon receiving the Equifax Dispute Letter, Equifax timely notified BOA of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

44. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

45. On or about July 11, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 6172006358) that BOA and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

46. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

47. BOA and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i(a) and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

48. BOA and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i(a).

49. BOA and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, BOA and Equifax still inaccurately reported that there was an "actual payment amount" of $550, even though Plaintiff was discharged on 3/03/2014. BOA and Equifax also still inaccurately reported that there was a "scheduled payment amount" of $279, even though Plaintiff was discharged on 3/03/2014.

50. BOA and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i(a).

51. Due to BOA's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i(a), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i(a).

52. Plaintiff's continued efforts to correct BOA's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with BOA and Equifax were fruitless.

53. BOA's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

54. Also as a result of BOA's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

55. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, BOA and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E), § 1681i(a) and § 1681e(b).

## THE EXPERIAN FURNISHER VIOLATIONS

### CITIBANK Misreported Credit Information

### RE: Account No. 2378

56. In an Experian credit report dated March 4, 2015, CITIBANK inaccurately reported that the Plaintiff still owed an outstanding balance of $4,060 as of

June 2010 even though CITIBANK's debt was discharged in the Bankruptcy. It was therefore inaccurate for CITIBANK to report a balance any greater than $0.

57. CITIBANK also inaccurately reported that the Plaintiff was "past due" in the amount of $338 as of September 2009.  Since Plaintiff discharged CITIBANK's debt, there was a $0 balance due at the time CITIBANK reported the past due balance. Accordingly, reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge.

58. CITIBANK also reported that the Plaintiff's account was in "Collection" in August 2009 and September 2009.  This was inaccurate, since the Plaintiff performed all obligations owed to CITIBANK after filing Chapter 13 and obtained a discharge.  Moreover, CITIBANK was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for CITIBANK to report that the Plaintiff was "past due" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to CITIBANK after filing the Chapter 13.

59. CITIBANK also reported the account "status" was "Collection account. $338 past due as of Sep 2009".  This was inaccurate, since the Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge.  Moreover, CITIBANK was paid according to the Chapter 13 Plan by the

Chapter 13 Trustee and it was inaccurate for CITIBANK to report that the Plaintiff's was "Collection account. $338 past due as of Sep 2009" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to CITIBANK after filing the Chapter 13.

60. On or about November 5, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed CITIBANK's reported information regarding its reported obligation by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by CITIBANK.

61. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

62. Upon receiving the Experian Dispute Letter, Experian timely notified CITIBANK of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

63. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

64. On or about December 3, 2015, Plaintiff received notification from Experian through its "reinvestigation" (Experian Report No. 1464-8052-71) that CITIBANK and Experian received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6), and verified the account as "Updated".

65. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

66. CITIBANK failed to conduct a reasonable investigation as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i(a) and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

67. CITIBANK failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and § 1681i(a).

68. CITIBANK re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, CITIBANK still inaccurately reported that the Plaintiff still owed an outstanding balance of $4,060 as of June 2010 even though CITIBANK's debt was discharged in the Bankruptcy. CITIBANK also still inaccurately reported that the Plaintiff was "past due" in the amount of $619 as of June 2010.  Also, CITIBANK still inaccurately reported that the Plaintiff's account was in "Collection" in August 2009 and June 2010.  Further, CITIBANK still inaccurately reported the account "status" was "Collection account. $619 past due as of Jun 2010".

69. CITIBANK, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i(a).

70. Due to CITIBANK's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i(a), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i(a).

71. Plaintiff's continued efforts to correct CITIBANK's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with CITIBANK were fruitless.

72. CITIBANK's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful.  Plaintiff is, accordingly, eligible for statutory damages.

73. Also as a result of CITIBANK's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

74. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, CITIBANK failed to take the

appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E), § 1681i(a) and § 1681e(b).

## NATIONSTAR Misreported Credit Information

## RE: Account No. 1843

75. In an Experian credit report dated March 4, 2015, NATIONSTAR inaccurately reported that the Plaintiff still owed an outstanding balance of $96,524 as of December 2014 even though NATIONSTAR's debt was discharged in the Bankruptcy. Further, on September 10, 2009, Plaintiff moved to strip off the second held by Countrywide, and the order was granted on January 25, 2010. It was therefore inaccurate for NATIONSTAR to report a balance any greater than $0.

76. NATIONSTAR also inaccurately reported that the Plaintiff was "past due" in the amount of $44,187 as of December 2014.  Since Plaintiff discharged NATIONSTAR's debt, there was a $0 balance due at the time NATIONSTAR reported the past due balance. Accordingly, reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge.

77. NATIONSTAR also reported balances from June 2014 through November 2014.  Since Plaintiff discharged NATIONSTAR's debt, there was a $0 balance due any time after the discharge date and reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge.

78. NATIONSTAR also reported that the Plaintiff was 180 days past due in every month from June 2014 through December 2014.  This was inaccurate, since the Plaintiff performed all obligations owed to NATIONSTAR after filing Chapter 13 and obtained a discharge.  Moreover, NATIONSTAR was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for NATIONSTAR to report that the Plaintiff was "past due" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to NATIONSTAR after filing the Chapter 13.

79. NATIONSTAR also reported the account "status" was "Open. $44,187 past due as of Dec 2014".  This was inaccurate, since the Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge.  Moreover, NATIONSTAR was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for NATIONSTAR to report that the Plaintiff's account was "Open. $44,187 past due as of Dec 2014" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to NATIONSTAR after filing the Chapter 13.

80. On or about November 5, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed NATIONSTAR's reported information regarding its reported obligation by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by NATIONSTAR.

81. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

82. Upon receiving the Experian Dispute Letter, Experian timely notified NATIONSTAR of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

83. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

84. On or about December 3, 2015, Plaintiff received notification from Experian through its "reinvestigation" (Experian Report No. 1464-8052-71) that NATIONSTAR and Experian received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6), and verified the account as "Updated".

85. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

86. NATIONSTAR failed to conduct a reasonable investigation as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i(a) and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

87. NATIONSTAR failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and § 1681i(a).

88. NATIONSTAR re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, NATIONSTAR still inaccurately reported that the Plaintiff still owed an outstanding balance of $133,013 as of June 2015 even though NATIONSTAR's debt was discharged in the Bankruptcy. NATIONSTAR also still inaccurately reported that the Plaintiff was "past due" in the amount of $133,013 as of June 2015. Also, NATIONSTAR still inaccurately reported balances from June 2014 through February 2015. Further, NATIONSTAR still inaccurately reported that the Plaintiff was 180 days past due in every month from April 2014 through May 2015. NATIONSTAR also still inaccurately reported the account "status" was "Account charged off. $133,013 written off. $133,013 past due as of Jun 2015". Also, NATIONSTAR now inaccurately reported that it "charged off" the account in June 2015. This was inaccurate, since NATIONSTAR could only report the "charge off", if at all, no later than the bankruptcy filing date.

89. NATIONSTAR, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i(a).

90. Due to NATIONSTAR's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i(a), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i(a).

91. Plaintiff's continued efforts to correct NATIONSTAR's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with NATIONSTAR were fruitless.

92. NATIONSTAR's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

93. Also as a result of NATIONSTAR's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

94. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, NATIONSTAR failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E), § 1681i(a) and § 1681e(b).

## **MACYS Misreported Credit Information**

## **RE: Account No. 5870**

95. In an Experian credit report dated March 4, 2015, MACYS inaccurately reported that the Plaintiff still owed an outstanding balance of $175 as of February 2015 even though MACYS's debt was discharged in the Bankruptcy. It was therefore inaccurate for MACYS to report a balance any greater than $0.

96. MACYS also inaccurately reported that there was a "scheduled payment amount" of $25, even though Plaintiff was discharged on 3/3/2014 and no payments were due on this account creating the misleading and false impression that a debt was still owed and due.

97. On or about November 5, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed MACYS's reported information regarding its reported obligation by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by MACYS.

98. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

99. Upon receiving the Experian Dispute Letter, Experian timely notified MACYS of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

100.   Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

101.   On or about December 3, 2015, Plaintiff received notification from Experian through its "reinvestigation" (Experian Report No. 1464-8052-71) that MACYS and Experian received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6), and verified the account as "Updated".

102.   A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

103.   MACYS failed to conduct a reasonable investigation as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i(a) and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

104.   MACYS failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and § 1681i(a).

105.   MACYS re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, MACYS still inaccurately reported that the

Plaintiff still owed an outstanding balance of $419 as of November 2015 even though MACYS's debt was discharged in the Bankruptcy. MACYS also still inaccurately reported that there was a "scheduled payment amount" of $27, even though Plaintiff was discharged on 3/3/2014.

106.    MACYS, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i(a).

107.    Due to MACYS's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i(a), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i(a).

108.    Plaintiff's continued efforts to correct MACYS's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with MACYS were fruitless.

109.    MACYS's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

110.    Also as a result of MACYS's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation

credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

111.    By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, MACYS failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E), § 1681i(a) and § 1681e(b).

## THE INNOVIS VIOLATIONS

### NATIONSTAR Misreported Credit Information

### RE: Account No. 1843

112.    In an Innovis credit report dated August 31, 2015, NATIONSTAR inaccurately reported that the Plaintiff still owed an outstanding balance of $96,524 even though NATIONSTAR's debt was discharged in the Bankruptcy. Further, on September 10, 2009, Plaintiff moved to strip off the second held by Countrywide, and the order was granted on January 25, 2010. It was therefore inaccurate for NATIONSTAR to report a balance any greater than $0.

113.    NATIONSTAR also inaccurately reported that the Plaintiff was "past due" in the amount of $46,981.  Since Plaintiff discharged NATIONSTAR's debt, there was a $0 balance due at the time NATIONSTAR reported the past

due balance. Accordingly, reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge.

114.     NATIONSTAR also inaccurately reported that there was a "scheduled payment amount" of $665, even though Plaintiff was discharged on 3/13/2014 and no payments were due on this account creating the misleading and false impression that a debt was still owed and due.

115.     NATIONSTAR also reported that the Plaintiff was 180 days past due in every month from June 2014 through April 2015.  This was inaccurate, since the Plaintiff performed all obligations owed to NATIONSTAR after filing Chapter 13 and obtained a discharge.  Moreover, NATIONSTAR was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for NATIONSTAR to report that the Plaintiff was "past due" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to NATIONSTAR after filing the Chapter 13.

116.     NATIONSTAR also reported an account "status" of "180 days past due 06/14-04/15".   This was inaccurate, since the Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge.  Moreover, NATIONSTAR was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for NATIONSTAR to report that the Plaintiff's account was "180 days past due 06/14-04/15" after the Chapter 13

filing, since the Plaintiff fully performed all obligations owed to NATIONSTAR after filing the Chapter 13.

117. On or about November 5, 2015, Plaintiff disputed NATIONSTAR's reported information regarding its reported obligation pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Innovis, in writing, of the incorrect and inaccurate credit information furnished by NATIONSTAR.

118. Specifically, Plaintiff sent a letter, certified, return receipt, to Innovis (the "Innovis Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

119. Upon receiving the Innovis Dispute Letter, Innovis timely notified NATIONSTAR of the dispute based on its mandated statutory duty pursuant to 15 U.SC. § 1681i.

120. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

121. On or about December 2, 2015, Plaintiff received notification from Innovis through its "reinvestigation" (Innovis Report No. 13017501) that NATIONSTAR and Innovis received notice of Plaintiff's dispute pursuant to 15 U.SC. § 1681i(a)(6).

122.    A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

123.    NATIONSTAR and Innovis failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b)(1)(A) and § 1681i(a) and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

124.    NATIONSTAR and Innovis failed to review all relevant information provided by Plaintiff in the dispute to Innovis, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i(a).

125.    NATIONSTAR and Innovis re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, NATIONSTAR and Innovis still inaccurately reported that the Plaintiff still owed an outstanding balance of $133,013 even though NATIONSTAR's debt was discharged in the Bankruptcy. NATIONSTAR and Innovis also still inaccurately reported that the Plaintiff was "past due" in the amount of $133,013.  Also, NATIONSTAR and Innovis now inaccurately reported an account "status" of "Charge off".

126.    NATIONSTAR and Innovis, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and § 1681i(a).

127.     NATIONSTAR and Innovis failed to review all relevant information provided by Plaintiff in the dispute to Innovis, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B) and § 1681i(a).

128.     Due to NATIONSTAR's and Innovis's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E) and § 1681i(a), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and § 1681i(a).

129.     Plaintiff's continued efforts to correct NATIONSTAR's and Innovis's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with NATIONSTAR and Innovis were fruitless.

130.     NATIONSTAR's and Innovis's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful.  Plaintiff is, accordingly, eligible for statutory damages.

131.     Also as a result of NATIONSTAR's and Innovis's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

132.    By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, NATIONSTAR and Innovis failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E), § 1681i(a) and § 1681e(b).

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 *ET SEQ*. (FCRA)**

133.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

134.    The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

135.    As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

136.    As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15

U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15

U.S.C. § 1681o(a)(2) from Defendants.

### PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief

against Defendants:

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C.
  § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15
  U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for
  each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

///


///


///

## TRIAL BY JURY

137.     Pursuant to the seventh amendment to the Constitution of the United

States of America, Plaintiff is entitled to, and demands, a trial by jury.


Dated: January 24, 2017

Respectfully submitted,

By  /s/ David H. Krieger, Esq.

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*THERESA M. DOLAN*